[Cite as *State v. Nguyen*, 2013-Ohio-3170.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA14 |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| CHARLES H. NGUYEN, | : | |
| | : | **RELEASED 07/11/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Elizabeth Gaba, Columbus, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecutor, and George J. Reitmeier, Athens County Assistant Prosecutor, for appellee.
_____

Harsha, J.

{¶1} Charles Nguyen appeals his convictions for rape, kidnapping, aggravated burglary, and tampering with evidence. Nguyen contends the trial court violated his constitutional rights when it permitted expert testimony from Dwayne Winston, Derek Shoemaker, and Natalie Saracco, in violation of Evid.R. 702 and 705. However, Saracco did not act as an expert on the matters Nguyen complains about. Therefore, that testimony could not have violated Evid.R. 702 or 705. Moreover, Nguyen fails to adequately explain how the testimony of Winston and Shoemaker violated the rules of evidence and how those violations in turn resulted in a violation of his constitutional rights.

{¶2} Nguyen also argues the court erred when it denied his pre-trial request for a rape shield hearing. However, this request was untimely. And the court did ultimately

conduct the hearing during trial, so we fail to see how Nguyen suffered any prejudice.

{¶3}    In addition, Nguyen contends the court erred when it did not let him make inquiries during trial about the victim's sexual past.  However, Nguyen did or could have asked several of the questions he claims the court prohibited.  Moreover, the court did not err when it excluded evidence that the victim and Nguyen engaged in sexual activity one time prior to the rape.  The court could reasonably conclude the inflammatory or prejudicial nature of this evidence outweighed its slight probative value and that the State's interests advanced by the rape shield law outweighed the probative value of the evidence.

{¶4}    Next, Nguyen contends the court violated Evid.R. 403(A) and 611(A) when it admitted into evidence enlarged photos, which purportedly depict bruising of the victim's cervix.  However, the trial court reasonably concluded the probative value of the photos was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  And the admission of the photos did not make the presentation of evidence ineffective for ascertainment of the truth.  Therefore, we find no abuse of discretion occurred.

{¶5}    Nguyen also claims the court erroneously let the jury see exhibits in bags with "testimonial statements" written on the bags.  Even if we presume error occurred, it was harmless beyond a reasonable doubt.  The legible statements Nguyen objects to are duplicative of other evidence at trial.  Moreover, the illegible statements Nguyen also objects to could not have influenced the jury because they had no discernible meaning.

{¶6}    In addition, Nguyen contends the court violated his rights under the

Confrontation Clause when it prohibited him from asking the victim certain questions to determine whether she had been coached.  However, Nguyen did elicit testimony on this point – the victim denied discussing her testimony with anyone.  Because a defendant has no right to ask a witness repetitive questions until he gets an answer that he likes, the court's restrictions were proper and did not violate his right of confrontation.

{¶7}    Next, Nguyen argues the court also violated his Confrontation Clause rights when it refused to let him cross-examine a deputy about a police report used to refresh his memory.  Nguyen claims Evid.R. 612 permitted his questions but again fails to explain how a violation of the rule constitutes a Sixth Amendment violation.  Moreover, he vaguely claims the report contradicted the deputy's testimony without explaining what the purported contradictions were or why they are significant.  It is not this court's function to construct an appellant's arguments for him.

{¶8}    In addition, Nguyen argues the court erred when it permitted the prosecutor, under the guise of refreshing the victim's memory, to have the victim read four exhibits to the jury.  Even if the court erred in this regard, and even if that error was of constitutional magnitude, it was harmless beyond a reasonable doubt.  Another witness also read two of the exhibits to the jury without objection.  And the information in the other two exhibits was duplicative of other evidence adduced at trial.

{¶9}    Nguyen contends his convictions are against the manifest weight of the evidence and insufficient evidence supports them.  He implicitly concedes the victim's testimony alone, if believed, supports the rape, kidnapping, and aggravated burglary convictions.  His explicit argument simply attacks her credibility and that of other State's witnesses.  But we leave credibility determinations to the trier of fact.  For the tampering

with evidence conviction, Nguyen again attacks the victim's credibility and also argues that no evidence supports his conviction. However, the State presented evidence for each element of the offense, so we cannot say the jury clearly lost its way and created a manifest miscarriage of justice when it found Nguyen guilty. His convictions are not against the manifest weight of the evidence and are supported by sufficient evidence.

{¶10} Nguyen also complains the court committed reversible error when, prior to the trial date, it sua sponte excused several prospective jurors for various reasons, like vacations and medical issues. However, this is not grounds for reversal – the discharge of a prospective juror on grounds of personal excuse is solely a matter between the court and juror. Absent a systematic abuse, the parties cannot interfere with the court's discretion. Moreover, the court's actions did not deprive Nguyen of the essential benefits of voir dire.

{¶11} Next, Nguyen contends the court erred when it removed a prospective juror for cause – financial hardship – as she expressed a willingness to serve on the jury and said she would "get by somehow." However, the court was free to conclude she had a financial hardship because she lived paycheck to paycheck, would miss two-thirds of her work week for each week of trial, and suggested that to "get by" she might have to take out a loan. Therefore, the court's decision to remove her for cause was reasonable and did not constitute an abuse of discretion.

{¶12} In addition, Nguyen argues that the court erred when it failed to merge certain convictions. We agree that rape and kidnapping are offenses of similar import; but we also agree with the court's conclusion that Nguyen had a separate animus for each crime. In addition, we agree that kidnapping and aggravated burglary are offenses

of similar import and that rape and aggravated burglary are also offenses of similar import. We remand so the trial court can make an initial determination of whether these pairs of offenses were committed separately or with a separate animus and if necessary, resentence Nguyen accordingly.

{¶13} Finally, Nguyen complains that the court erred when it imposed maximum and consecutive sentences. We decline to address his arguments at this time about the rape, kidnapping, and aggravated burglary offenses because they may be rendered moot on remand. For tampering with evidence, the court imposed the maximum sentence but ordered Nguyen to serve it concurrently to the other sentences. This sentence is neither clearly and convincingly contrary to law, nor did the court demonstrate an unreasonable, arbitrary, or unconscionable attitude when it imposed the sentence. Accordingly, we reject Nguyen's argument.

I. Facts

{¶14} A grand jury indicted Nguyen for rape, kidnapping, aggravated burglary, and tampering with evidence. He pleaded not guilty, and a jury trial ensued.

{¶15} The State presented the following version of events. Nguyen and the victim, Hong "Jenny" Nguyen (who is not related to the appellant), met online on VietSingle.com. Nguyen lived in New York City, and Jenny lives in Athens, Ohio. Near the end of March 2009, Jenny went on vacation to New York City and met Nguyen in person. On the second day of the trip, Jenny told Nguyen she just wanted to be friends. But they continued to communicate, and Nguyen visited her in Ohio from May 9, 2009, to May 17, 2009. During the visit, Jenny realized they could not be friends because Nguyen still wanted a romantic relationship. When she drove him to the airport on May

17th, Jenny ended the friendship.  She tried to give Nguyen a goodbye hug at the airport, but he turned and walked away.

{¶16}  On May 19, 2009, Nguyen unexpectedly came to Jenny's apartment where she was, along with her three-year-old nephew, Kayden.  Nguyen told her that he wanted to apologize for his behavior at the airport and stepped into the apartment. Jenny went to her bedroom to change because she felt exposed in her pajamas. Nguyen followed, so she sat on the edge of her bed and used her arms to cover herself. Nguyen sat and told her that he wanted them to be together.  When she rejected him, he took white rope from his pocket.  She asked what he was doing, and he told her not to scream.  Jenny begged him not to "do this," but he took off her shorts and ripped her shirt off.  He spread her legs and examined her to see if she had "had sex with anybody."

{¶17}  Later, Nguyen told Jenny to turn around so he could tie her hands with the rope.  She kept saying "please don't," and Nguyen told her not to scream or he would kill Kayden.  After he tied her hands up, he told her to lie on the bed so he could tie her ankles together.  When she begged him to not kill her, he replied he would not because he loved her.  Jenny tried to fight, but he said, "I am not kidding around, I am going to kill Kayden."  When Jenny continued to fight, Nguyen said, "I swear I have scissors in my pockets I will slit his throat."  She lay on the bed, and he tied her ankles together. Jenny tried to calm Nguyen down while she worked one of her wrists free.  Nguyen made her promise to give their relationship another chance and said if she broke her promise, her family would "die a horrible death."  Then he used scissors and cut the ropes off her ankles and other wrist.  But when Jenny sat up, Nguyen took off his pants

and said "I am just gonna do this." Jenny begged him to stop, but he threatened Kayden again. Nguyen let Jenny check on Kayden in another room, but when she returned to the bedroom, he told her to "lay down, we are gonna do this." Then he inserted his penis into her vagina. A few minutes later, he ejaculated on her stomach, and she used a scarf to wipe off the ejaculate.

{¶18} Nguyen told Jenny he was taking her to New York. He made her pack and get dressed, and he used medical tape to bind her arms together. He also tried to blindfold her with a tie and tape her mouth shut but took the items off when Jenny protested. He took her to the living room and asked if she was going to call the police. After Jenny promised she would not, he used the scissors to cut her free. He let Jenny get in her car with Kayden around 9:45 a.m. so she could go to work. Jenny drove to work, where she told her sister's boyfriend what happened and called 911. Then she went to the police station. Before Jenny left the house, she saw Nguyen pick up pieces of the rope and stuff them in his pockets. She thought he also put the scissors and medical tape in his pockets. Law enforcement did not find the scissors or tape at the crime scene and only found what Jenny identified as a portion of the rope Nguyen used. The State presented evidence that Nguyen's semen was in Jenny's vagina after the incident, and his cell phone was in the Athens area around the time of the rape.

{¶19} Nguyen did not testify or call any witnesses on his behalf.

{¶20} A jury found Nguyen guilty on all counts. The court sentenced him to 10 years each for rape, kidnapping, and aggravated burglary and five years for tampering with evidence. The court ordered that the sentences for rape, kidnapping, and aggravated burglary run consecutive to each other and the sentence for tampering with

evidence run concurrent to the other sentences, for an aggregate 30-year sentence.

Nguyen filed an appeal, which we dismissed for lack of a final order because the trial

court had not ruled on a motion for a new trial. *State v. Nguyen*, 4th Dist. No. 10CA43,

2012-Ohio-2488. After the court denied the motion, Nguyen filed this appeal.

## II. Assignments of Error

**{¶21}** Nguyen assigns nine errors for our review:[1]

1.    "THE TRIAL COURT ERRED TO THE PREJUDICE OF DR.
      NGUYEN AND INFRINGED UPON HIS RIGHTS UNDER THE
      SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED
      STATES CONSTITUTION (CONFRONTATION AND DUE
      PROCESS), WHEN IT PERMITTED EXPERT TESTIMONY
      CONTRARY TO RULES 702 AND 705 OF THE OHIO RULES OF
      EVIDENCE [Day 3, Vol. 2, pp. 279-344; Day 4, Vol. 1, pp. 6-167;
      Day 5, Vol. 1, pp. 38-40]."

2.    "THE TRIAL COURT ERRED TO THE PREJUDICE OF DR.
      NGUYEN WHEN IT FAILED TO A HOLD A RAPE SHIELD
      HEARING BEFORE TRIAL AND DURING TRIAL, AT DR.
      NGUYEN'S REQUEST, IN VIOLATION OF R.C. 2907.02 AND THE
      SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED
      STATES CONSTITUTION [Final Pre-Trial, pp. 36-47: 8/2/10; Day
      2, Vol. 1, pp. 61-68, 70]."[2]

3.    "THE TRIAL COURT ERRED WHEN IT PERMITTED ENLARGED
      PHOTOGRAPHS OF THE ALLEGED RAPE VICTIM'S CERVIX
      AND EXHIBIT BAGS LABELED WITH TESTIMONIAL
      STATEMENTS TO BE USED IN JURY DELIBERATIONS IN
      VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
      TO THE UNITED STATES CONSTITUTION, ALONG WITH
      RULES 403(B) AND 611(A) OF THE OHIO RULES OF EVIDENCE
      [Day 5, Vol. 2, pp. 277-278; Day 9, Vol. 1, pp. 105-121]."

4.    "THE TRIAL COURT ERRED WHEN IT DID NOT PERMIT
      DEFENSE COUNSEL TO FULLY CROSS-EXAMINE THE

---

[1] We take these assignments of error from his brief's table of contents.
[2] Nguyen states this assignment of error differently in the Law and Argument portion of his brief. There he claims: "THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A RAPE SHIELD HEARING BEFORE TRIAL AND DURING TRIAL, AT DR. NGUYEN'S REQUEST, AND BY RESTRICTING CROSS-EXAMINATION IN VIOLATION OF R.C. 2907.02 AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION." (Appellant's Br. 8).

ALLEGED RAPE VICTIM CONCERNING CONVERSATIONS SHE HAD ABOUT HER TESTIMONY DURING A RECESS AND PROHIBITED CROSS-EXAMINATION OF AN OFFICER ABOUT A POLICE REPORT USED DURING TESTIMONY AND TO PREPARE UNDER OHIO EVIDENCE RULE 612, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.  [Day 7, Vol. 1, p. 165-166; Day 4, Vol. 1, p. 246, Vol. 2, p. 302-303].”

5.   “DR. NYUGEN'S CONVICTIONS AND SENTENCES ON THE RAPE, KIDNAPPING AND AGGRAVATED BURGLARY VIOLATES THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION [Sentencing Transcript. 8/18/10].”

6.   “THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING MAXIMUM, CONSECUTIVE SENTENCES WITHOUT ADEQUATE JUSTIFICATION [Sentencing Transcript. 8/18/10].”

7.   “THE CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION [Day 6, Vol. 1, pp. 27 – Day 7, p. 182].”

8.   “THE TRIAL COURT ERRED IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DUE PROCESS) AND RULE 612 OF THE OHIO RULES OF EVIDENCE WHEN IT PERMITTED THE PROSECUTOR, UNDER THE GUISE OF REFRESHING  A WITNESS'S MEMORY, TO PUT BEFORE THE JURY CONTENTS OF AN INADMISSIBLE DOCUMENT [Day 6, Vol. 1, p. 119-131].”

9.   “THE TRIAL COURT ERRED WHEN IT EXCUSED JURORS, EX PARTE, WITHOUT THE PRESENCE OF DEFENSE COUNSEL OR DR. NGUYEN AND ONE FOR CAUSE, VIOLATING DEFENDANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, R.C. 2945.27, ALONG WITH RULES 24 & 43 OF THE OHIO RULES OF CRIMINAL PROCEDURE [Final Pre-Trial Transcript, p. 26 seq.- 8/2/10].”

### III.  Expert Testimony and the Sixth Amendment

**{¶22}** In his first assigned error, Nguyen complains the trial court violated his

rights under the Sixth and Fourteenth Amendments to the United States Constitution when it permitted expert testimony from three people contrary to Evid.R. 702 and 705. In a footnote, he states that each constitutional claim "invokes both the federal constitutional provision and its Ohio constitutional counterpart." (Appellant's Br. 5). However, because he does not separately argue the state constitutional issue, we reject it summarily. *See* App.R. 16(A); App.R. 12(A)(2); and paragraph 31 below.

**{¶23}** Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶24}** Evid.R. 705 states: "The expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

**{¶25}** Under the rules of evidence, "[t]he determination of the admissibility of

expert testimony is within the discretion of the trial court.  Evid.R. 104(A).  Such decisions will not be disturbed absent abuse of discretion."  *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.  The phrase "abuse of discretion" implies the court's attitude is unreasonable, unconscionable, or arbitrary.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶26}**  However, the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."  Implicit in this guarantee is the right to cross-examine adverse witnesses.  *State v. Keck*, 4th Dist. No. 09CA50, 2011-Ohio-1643, ¶ 16.  This guarantee applies to the states through the Fourteenth Amendment.  *State v. Keairns*, 9 Ohio St.3d 228, 229, 460 N.E.2d 245 (1984), citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.E.2d 923 (1965).  Section 10, Article I, Ohio Constitution also guarantees the defendant's right to "meet the witnesses face to face."  It provides no greater right of confrontation than the Sixth Amendment.  *State v. Self*, 56 Ohio St.3d 73, 79, 564 N.E.2d 446 (1990).  " '[Q]uestions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo.' "  *State v. Dorsey*, 5th Dist. No. 11CA39, 2012-Ohio-611, ¶ 19, quoting *State v. Dunivant*, 5th Dist. No. 2003CA00175, 2005-Ohio-1497, ¶ 7.  Thus, our review is not limited by the normal deferential standard that applies to simple claims of violations of evidentiary rules.

A.  Testimony of Dwayne Winston

**{¶27}**  Nguyen claims the trial court improperly permitted testimony from Dwayne Winston, a laboratory technical director.  However, Nguyen did not object to the testimony and has forfeited all but plain error.  *See* Crim.R. 52(B).  "A silent defendant

has the burden to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *State v. Davis*, 4th Dist. No. 06CA21, 2007-Ohio-3944, ¶ 22, citing *United States v. Vonn*, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).  For us to find plain error: 1.) there must be an error, i.e., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  Plain error not only applies to purported evidentiary violations but also to purported constitutional errors.  *See State v. Butts*, 4th Dist. 11CA22, 2012-Ohio-571, ¶ 22 (applying plain error review to an alleged constitutional violation not objected to at the trial level).

{¶28}  "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it."  *Barnes* at 27.  The Supreme Court of Ohio has "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' "  *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶29}  Nguyen complains that during direct and part of cross-examination, Winston testified as if he personally received and tested swabs and a blood sample taken in this case for DNA.  Later, Winston explained that under his company's protocol, a lab assistant would have received the items, and a "technologist" would have tested the items to develop raw DNA data for analysis.  Winston did not conduct the tests himself or observe when the technologist conducted them.  He just interpreted the raw

data.

**{¶30}** Nguyen characterizes Winston's initial testimony as "deceptive," but the State claims Nguyen simply misinterprets it. Nguyen makes no effort to explain how Winston's testimony violated Evid.R. 702 and 705 or why those violations also are a violation of the federal or state constitutions; instead, he focuses on the "deceptive" nature of Winston's testimony. We do likewise. However, any "deception" was subject to clarification or exploitation on cross-examination.

**{¶31}** In addition, Nguyen complains the "deception" kept him "from objecting to Winston's testimony on hearsay, foundation, or confrontation clause grounds." (Appellant's Br. 7). However, once defense counsel became aware of the "deception," counsel could have objected to Winston's prior testimony and asked the court to strike it from the record. Counsel did not. Moreover, Nguyen's argument about his inability to object goes to the standard of appellate review, i.e., plain error, and does not explain how Winston's testimony violated evidentiary rules or constitutional provisions. " 'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. * * * It is not the function of this court to construct a foundation for [an] appellant's] claims[.]' " *In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio-6739, ¶ 18, quoting *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011-Ohio-506, ¶ 13. "In other words, '[i]t is not * * * our duty to create an argument where none is made.' " *In re A.Z.* at ¶ 18, quoting *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. No. 25281, 2011-Ohio-435, ¶ 7.

**{¶32}** Nguyen also argues that the "testing standards could not be tested via cross-examination due to [Winston's] deception." (Appellant's Br. 7). We find this statement confusing. Counsel could not cross-examine Winston about how the tests

were performed in this case because Winston lacked personal knowledge of that matter, not because Winston was "deceptive."

**{¶33}** In his reply brief, Nguyen suggests for the first time that the State, through Winston, improperly admitted testimonial statements of the technician who created the raw data that Winston analyzed. And Nguyen complains that because the "technologist" did not testify, he could not question that person's proficiency, etc., and therefore, Winston could not testify about his interpretation of the technologist's raw data. Nguyen also argues that his "entire defense may have been different" if he knew before trial that the State did not plan to call the technician as a witness. (Reply Br. 9).

**{¶34}** However, "[a] reply brief gives an appellant the opportunity to respond 'to the brief of the appellee.' App.R. 16(C). The appellant cannot raise an issue for the first time in a reply brief, and thus effectively deny the appellee an opportunity to respond to it." *Nemeth v. Nemeth*, 11th Dist. No. 2007-G-2791, 2008-Ohio-3263, ¶ 22. Therefore, we decline to address these arguments. *See In re Haubiel*, 4th Dist. No. 01CA2631, 2002-Ohio-4095, ¶ 25.

**{¶35}** Because Nguyen failed to demonstrate that any error, plain or otherwise occurred, we overrule the first assignment of error as it concerns Winston's testimony.

### B. Testimony of Derek Shoemaker

**{¶36}** Nguyen complains about the testimony of Derek Shoemaker, a reserve deputy for the Athens County Sheriff's Office, who testified about data recovery from cell phones. He testified that five videos were recovered from Nguyen's cell phone. He also testified that the videos were taken around May 14, 2009, and depicted a lady (who Jenny later identified as herself), from a slight distance away, who appeared to be

working.  The prosecutor played the videos for the jury, and Shoemaker identified them as videos he had seen.  During cross-examination, Shoemaker admitted he never saw the videos on the phone.  Though somewhat unclear, Shoemaker's testimony suggests he believed a company called Now You See It Investigations recovered the videos from the phone for the defense.  He saw the videos on a CD.  Nguyen never objected to Shoemaker's testimony about the videos and has forfeited all but plain error review.  *See* Section III.A., *supra* (explaining this standard).

**{¶37}**  Nguyen argues that "[n]o authority need be cited for the proposition that the State would not have been permitted to show the jury the video[s] had Shoemaker testified he had not reviewed or retrieved the videos on the phone, contrary to his direct testimony." (Appellant's Br. 7).  This assertion is contrary to App.R. 16(A)(7).  Nguyen makes no effort to explain how Shoemaker's testimony violated Evid.R. 702 and 705 or why those violations constitute violations of his constitutional rights that warrant a finding of plain error.  Again, it is not this court's duty to construct an appellant's argument for him.  *In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio-6739, at ¶ 18.  Therefore, we reject Nguyen's argument and overrule the first assignment of error as it relates to Shoemaker.

## C.  Testimony of Natalie Saracco

**{¶38}**  Nguyen also argues about the testimony of Natalie Saracco, a forensic scientist.  She swabbed a rope and latex gloves found at the crime scene, and those swabs were later tested for DNA by other people.  Nguyen complains Saracco failed to prepare an expert report, so he could not adequately cross-examine her.  Nguyen suggests that if he knew Saracco would be testifying without preparing a report, he

would have made additional trial preparations to challenge her testimony. Although Nguyen objected to Saracco's testimony under Evid.R. 702 and the Confrontation Clause, he did not object under Evid.R. 705. Therefore, we apply plain error analysis to the Evid.R. 705 claim. *See* Section III.A., *supra*.

{¶39} "Witnesses presented at trial can be categorized as either fact witnesses or expert witnesses." *D.M. v. J.M.*, 189 Ohio App.3d 723, 2010-Ohio-3852, 940 N.E.2d 591, ¶ 35 (9th Dist.). A fact witness testifies about "matters relevant to the case and within [her] personal knowledge." *State v. Reinhardt*, 9th Dist. No. 08CA0012-M, 2009-Ohio-1297, ¶ 9, citing Evid.R. 402 and Evid.R. 602. "A witness testifies as an expert when the subject matter of the testimony is related to matters that are beyond the knowledge or experience of laypersons; the witness possesses 'specialized knowledge, skill, experience, training or education' that relate[s] to the subject matter; and the witness testifies based on 'reliable scientific, technical, or other specialized information.' " *Reinhardt* at ¶ 9, quoting Evid.R. 702. " 'Persons who may qualify as an expert in certain circumstances may be called at other times as fact witnesses to testify as to matters within their knowledge.' " *D.M.* at ¶ 35, quoting *Reinhardt* at ¶ 9.

{¶40} As the State suggests, Saracco was merely a fact witness in the context of the swabs of the gloves and rope. Saracco testified to matters within her personal knowledge, i.e., she swabbed the items and temporarily stored the swabs. Because she was not an expert witness when she testified about this, her testimony could not violate Evid.R. 702 or 705. Consequently, no constitutional violation occurred as Nguyen contends. Moreover, the trial court let defense counsel question Saracco about the swabs outside the jury's presence and gave counsel a brief recess to review

Saracco's notes. Thus, it seems counsel had ample opportunity to prepare to cross-

examine Saracco on what appears to be a very simple matter. Therefore, we reject

Nguyen's argument and overrule the first assignment of error.

IV. Rape Shield Hearing and Evidence of the Victim's Past Sexual Activity

{¶41} In his second assigned error, Nguyen complains the court erred when it

refused to hold a rape shield hearing when he requested it and restricted his ability to

cross-examine witnesses about the victim's sexual history in violation of R.C. 2907.02

and his Sixth Amendment rights. The jury found Nguyen guilty of rape under R.C.

2907.02. Subsection D of that statute contains Ohio's rape shield law, which states:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
>
> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. R.C. 2907.02(D).

{¶42} Under R.C. 2907.02(E):

> Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

{¶43} The day before trial, defense counsel orally told the court he wanted a

R.C. 2907.02(E) hearing.  He waited until the day of trial to file a written request.

Initially, Nguyen complains the court erred when it rejected the request as untimely.  But

R.C. 2907.02(E) plainly states the hearing shall occur "not less than three days before

trial * * *."  After that, the court need only conduct a hearing "for good cause shown

*during the trial.*"  (Emphasis added).  R.C. 2907.02(E).  Moreover, we fail to see how

Nguyen was prejudiced by the court's decision because as he acknowledges, the court

ultimately conducted a rape shield hearing during trial at the State's request.

**{¶44}**  Next, Nguyen complains the court violated R.C. 2907.02(D) and his Sixth

Amendment rights when it refused to let him question witnesses about aspects of the

victim's sexual history.  We review the court's R.C. 2907.02(D) rulings for an abuse of

discretion.  *See State v. Jordan*, 7th Dist. No. 06 HA 586, 2007-Ohio-3333, ¶ 48.  But as

already noted, we ordinarily use a de novo standard to review alleged violations of a

criminal defendant's rights under the Confrontation Clause of the Sixth Amendment.

*State v. Osman*, 4th Dist. No. 09CA36, 2011-Ohio-4626, ¶ 78.

**{¶45}**  First, Nguyen complains that during trial the court did not permit him to

discuss the fact that he and the victim were "in bed" together "just days before her

claims of rape, which was not in dispute."  (Appellant's Br. 8-9).  We find this argument

confusing.  Nguyen implies that the victim admitted to consensual sexual activity with

him in the days before the rape, but this is not true.  At the rape shield hearing, Jenny

denied any sexual activity with Nguyen except an incident in New York, which we

discuss in more detail below.  Jenny did admit that during Nguyen's visit to Athens, the

pair watched two movies together on her bed.  This is clearly not "sexual activity" and is

therefore not even subject to R.C. 2907.02(D).  *See* R.C. 2907.01.  Moreover, on cross-

examination Jenny did testify about the movie watching. So contrary to Nguyen's claim, the court did permit defense counsel to question the victim about the fact that she and Nguyen were "in bed" together a few days before the rape.

**{¶46}** Nguyen also complains that the origin of semen was at issue and argues that the court wrongly prevented him from inquiring about semen deposits in the victim's bedroom. Nguyen claims that his semen was found "in areas of [the victim's] mattress that the State did not even attempt to connect to the alleged rape." (Appellant's Br. 10). He suggests, but does not specifically argue, that the semen was located on areas of the mattress that did not fit the victim's story about how the rape occurred. He argues that the semen "could have been deposited" during consensual sexual encounters between him and the victim in the days leading up to the rape. (Appellant's Br. 11).

**{¶47}** Nguyen fails to cite where in this extensive record there is evidence that his semen was actually found on the mattress. *See* App.R. 16(A)(7). If this evidence exists, we fail to see how the "origin" of it would be at issue because Nguyen admits the semen was his. Nguyen's actual argument appears to be that the semen relates to the issue of consent, i.e., if he had consensual sex with Jenny days before the alleged rape, it is more likely the "rape" was also consensual.

**{¶48}** However, the trial court did not prohibit Nguyen from asking the victim about semen deposits on the mattress. At the end of the rape shield hearing, the court told defense counsel he could ask the victim about whether she had sex with Nguyen in Ohio apart from the rape. Thus, if Nguyen's semen was on the mattress, defense counsel could have questioned the victim about whether she and Nguyen engaged in other sexual activity that could account for it.

{¶49} Nguyen complains that the court did not permit him to cross-examine the victim about sexual activity that occurred between them in New York. At the rape shield hearing, Jenny testified that on the morning of the first full day of her New York trip:

> I was awakened by [Nguyen's] hands touching me, touching my, touching me down there. Touching my vagina. And pushed it away and he just said please can I touch it. And kept on saying can I touch it, so I pushed it away again, and then the third time, um I did let him touch it. And he stopped. Then after that he took my hand and he put it on his penis. And I pulled my hand away, a couple of times. And then on the, and then on the third time he went ahead and put it back, my hands on his penis again and that's when I masturbated him and well stroke his penis.

{¶50} As the trial court noted, the New York incident occurred around two months before the rape. In his reply brief, Nguyen argues that the New York incident is not that remote in time from the rape because he and the victim had a long distance relationship and little opportunity for physical contact. This argument ignores the fact that there is no evidence of sexual activity during the rest of the New York trip or during Nguyen's 9-day vacation with the victim right before the rape. Moreover, as the trial court stated, the New York incident is a "different type of thing" from the rape. During the New York incident, Nguyen and the victim touched each other's genitals with their hands. The victim testified, and the evidence supports the conclusion that, the Ohio incident involved vaginal intercourse and bondage and resulted in physical injuries to Jenny. Thus, evidence supports a conclusion that the inflammatory or prejudicial nature of the evidence of the New York incident outweighed its very slight probative value. The court properly found the evidence inadmissible under R.C. 2907.02.

{¶51} As to Nguyen's Sixth Amendment argument, it is apparent that at the rape shield hearing he failed to raise any constitutional arguments when the court ruled on the admissibility of evidence of the New York incident. Thus, we apply plain error

analysis to this issue. *See* Section III.A., *supra* (explaining and applying this standard).

**{¶52}** "The rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal process." *State v. Boggs*, 63 Ohio St.3d 418, 422, 588 N.E.2d 813 (1992). In determining whether the rape shield law has been unconstitutionally applied, we must "balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979). Ohio's rape shield law advances several legitimate interests:

> First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process. *Id.* at 17-18.

**{¶53}** As we already explained, evidence of the New York incident had little probative value. Thus, the court could conclude the State's interests outweighed the probative value of the evidence. Therefore, we find no constitutional error occurred.

**{¶54}** Next, Nguyen complains he could not "cross-examine State witnesses concerning [Jenny's] prior sexual activities, or compel his own witness testimony." (Appellant's Br. 9). This argument is vague. Nguyen does not say what evidence he wanted to introduce and could not. He appears to simply complain he could not go on a fishing expedition into the victim's sexual past, which is not permissible.

**{¶55}** In addition, Nguyen complains he should have been able to introduce evidence of his prior sexual relationship with the victim to rebut "the witnesses' false testimony early on that the accuser's and Dr. Nguyen's relationship was purely platonic

* * *." (Appellant's Br. 10-11).  Although confusing, it appears Nguyen argues that he should have been permitted to question Jenny about the New York incident to prove her friends and family lied when they testified that she and Nguyen were just friends. However, there is no evidence Jenny's friends or relatives knew of the New York incident.

{¶56}  In his reply brief, Nguyen makes extensive arguments about why he should have been permitted to question the victim about any consensual sexual activities that occurred during the 9-day Ohio visit.  But as we noted above, the court told Nguyen he could ask the victim about this.  Defense counsel chose not to do so.

{¶57}  For the foregoing reasons, we overrule the second assignment of error.

V.  Photographs and "Testimonial Statements" on Exhibit Bags

{¶58}  In his third assignment of error, Nguyen contends the court erred in violation of the Sixth and Fourteenth Amendments and Evid.R. 403(A)[3] and 611(A) when it permitted enlarged photographs of the victim's cervix and exhibit bags with "testimonial statements" on them to be used in jury deliberations.

A.  Photographs

{¶59}  Although the assigned error appears to raise a constitutional challenge to the admission of photographs of the victim's cervix, Nguyen's argument focuses solely on Evid.R. 403(A) and 611(A).  So we limit our analysis to those rules.  Again, see App.R. 16(A)(7).  Evid.R. 403(A) prohibits the introduction of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Relevant evidence is "evidence

---

[3] In the assigned error, Nguyen actually cites Evid.R. 403(B), but this appears to be a typographical error as his argument focuses on Evid.R. 403(A).

having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence."  Evid.R. 401.  Evid.R. 611(A) provides:  "The court shall exercise reasonable

control over the mode and order of interrogating witnesses and presenting evidence so

as to (1) make the interrogation and presentation effective for the ascertainment of the

truth * * *."  Generally absent an abuse of discretion, we will not disturb a trial court's

ruling on the admissibility of evidence.  *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-

Ohio-3367, ¶ 31.

{¶60}  The State introduced the photographs at issue on day 3 of the trial.

Deborah Corbin, the registered nurse who took them, identified and testified about the

photos without objection.  Nguyen did not object to them until day 5 when the State

sought to admit the photos into evidence.  Even then, he only objected under Evid.R.

403 and not Evid.R. 611.  "To be timely, an evidentiary objection at trial must be made

when the State presents the evidence."  *State v. Bogan*, 2d Dist. No. 24896, 2012-Ohio-

3712, ¶ 20.  Because Nguyen failed to contemporaneously object during the

identification of and testimony about the photos, he forfeited all but plain error review.

*See id.* at ¶ 20-21.  *See also* Section III.A., *supra* (explaining and applying this standard

of review).

{¶61}  Nguyen complains the photos should have been taken with a colposcope

instead of a digital camera.  He contends the photos are "<u>inaccurate</u> <u>enlarged</u>

photographs of a minor injury or abrasion to [the victim's] cervix."  (Emphasis sic).

(Appellant's Br. 12).  And he argues that the jury "was not simply looking at an injury

caused to [the victim], the jury was then looking at an enlarged version of what may not

have even been an injury." (Appellant's Br. 13).

{¶62} However, Corbin testified the photographs did depict an injury – bruising to the cervix. The photos were probative because Corbin testified something has to contact the cervix for bruising to occur. And Dr. Gwendolyn Nilsen testified that bruising is evidence of "injury and violence to the cervix[.]" Corbin testified that her employer has a colposcope, i.e., a "high definition like camera," that is used during vaginal exams. However, it was not working when she examined Jenny, so Corbin photographed the cervix with a digital camera and used the zoom function. Nguyen admits that size alone does not "automatically increase the prejudicial aspect" of photographic evidence. *State v. Biros*, 78 Ohio St.3d 426, 444, 678 N.E.2d 891 (1977). And the mere fact that Corbin used a digital camera instead of a colposcope does not diminish the probative value of the photos to the point they should be inadmissible. Rather, Nguyen's argument goes to weight given the evidence, not its admissibility. Jurors knew Corbin used a digital camera and could consider that when they evaluated the photos.

{¶63} Based on the foregoing, we conclude the trial court did not violate Evid.R. 403(A) or 611(A). The probative value of the photos was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. And the court's admission of the photos did not make the presentation of evidence ineffective for the ascertainment of the truth. Because no error occurred, plain error cannot exist. Accordingly, we overrule this portion of the third assignment of error.

### B. "Testimonial Statements" on Exhibit Bags

{¶64} Nguyen also contends the bags containing certain exhibits had testimonial statements on them, and the court violated his Sixth and Fourteenth Amendment rights,

along with Evid.R. 403(A) and 611(A), when it permitted the jury to see the bags during deliberations.  *See* Sections III. and V.A., *supra*, (explaining our standard of review for these issues).  The parties appear to dispute whether we should apply plain error analysis because Nguyen objected to the statements after the exhibits were admitted.  Regardless of what standard we apply, Nguyen's assignment of error cannot succeed.

**{¶65}**  Nguyen complains the bag for exhibit 65 stated "scarf with possible semen of suspect."  (Appellant's Br. 13).  He argues the scarf was never tested for semen, but this was clear from the use of the word "possible."  Moreover, when Deputy Flickenger identified the garment, he testified without objection that it was "a scarf, uh, possible seamen [sic] stain on this garment."  And as Nguyen points out, the victim testified that she wiped Nguyen's semen off using the scarf.  Therefore, the jury knew from sources aside from the bag it was possible the scarf had semen on it.  It also knew Nguyen was the suspect.

**{¶66}**  Next, Nguyen complains the bag for exhibit 66, latex gloves, stated "laying on the floor..." (Appellant's Br. 13).  But Flickenger testified that was where he found them.  Nguyen argues the bag for exhibit 67, a shirt, said "torn off victim by suspect." (Appellant's Br. 13).  But Jenny testified Nguyen tore off her shirt.  He also complains the bag for exhibit 69, a piece of rope, states it was "found at the end of the bed." (Appellant's Br. 13).  But Flickenger testified he found the rope there.  So again, the jury had all the information Nguyen complains about from sources aside from the bags.  Nguyen also argues that he could not read some words on the bags for Exhibits 68 and 69.  We fail to see how illegible words impacted the jury.

**{¶67}**  Thus, to the extent any error occurred under the Ohio Rules of Evidence,

it is harmless because it did not affect any substantial rights. Crim.R. 52(A). Any constitutional error is harmless beyond a reasonable doubt. *See State v. Ellis*, 4th Dist. No. 11CA3, 2012-Ohio-1022, ¶ 15. We overrule the rest of the third assigned error.

### VI. Limitations on Cross-Examination of the Victim and Deputy Flickenger

#### A. The Victim

**{¶68}** In his fourth assignment of error, Nguyen contends in part that the court violated his rights under the Sixth Amendment Confrontation Clause when it did not let him "fully" cross-examine the victim about conversations she had about her testimony during a trial recess. A trial court "retains wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination based on concerns about issues such as harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or irrelevant." *State v. Knapke*, 10th Dist. No. 08AP-933, 2009-Ohio-2989, ¶ 7.

**{¶69}** Nguyen claims that "[d]uring a recess, [Jenny] was overheard discussing her testimony with someone who appeared to be a state or county employee. * * * Among other things, the person complimented her performance on the witness stand." (Appellant's Br. 16). Nguyen complains the court sustained the State's objection to questions about the substance of the victim's conversation with this "unknown individual" and whether the victim "was being coached." (Appellant's Br. 16).

**{¶70}** Despite Nguyen's claims, there is no evidence in the record that the victim spoke to anyone about her testimony during a recess. Moreover, the following testimony occurred without objection:

> Q:    Now prior to coming uh to testify, uh did you talk to anyone in the
>         Sheriff's department about your testimony, or your expected

Q:      testimony?
A:      No.

Q:      Did you talk to anyone about your expected testimony?
A:      No.

Q:      Uh did anyone try to talk to you about your expected testimony?
A:      No.

* * *

Q:      Now I am asking ma'am did anybody comment on your testimony between the time you got off the stand yesterday to the time you got on today?
A:      Uh, they did not –

**{¶71}** The victim denied that she spoke to anyone about her testimony and in effect denied that she was coached. So Nguyen did obtain answers to the matters he complains the court did not let him explore. The court had no duty to permit Nguyen to ask additional questions on this topic. A defendant has no right to ask repetitive questions until he gets an answer that he likes. *See Knapke*, 10th Dist. No. 08AP-933, 2009-Ohio-2989, at ¶ 7. We reject Nguyen's argument.

### B. Cross-Examination of Deputy Flickenger

**{¶72}** Nguyen also contends the court violated his Sixth Amendment Confrontation Clause rights when it did not let him cross-examine Deputy Flickenger about a police report the deputy used to refresh his memory. Nguyen claims Evid.R. 612 permits his proposed cross-examination but does not explain how a violation of that rule constitutes a Confrontation Clause violation. Moreover, he only vaguely claims in a parenthetical that the report "contradicted some of [Flickenger's] testimony." (Appellant's Br. 17). Nguyen does not explain what the purported contradictions were or why they are significant. " 'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. * * * It is not the function of this court to

construct a foundation for [an appellant's] claims [.]' " *In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio-6739, at ¶ 18, quoting *Coleman*, 4th Dist. No. 10CA5, 2011-Ohio-506, at ¶ 13. For the foregoing reasons, we reject Nguyen's claim and overrule the fourth assigned error.

### VII. Refreshing the Victim's Memory

{¶73} In his eighth assignment of error, Nguyen contends the court violated his rights under Evid.R. 612 when it permitted the prosecutor, under the guise of refreshing the victim's memory, to have the victim read certain exhibits to the jury. Although Evid.R. 612 does discuss the use of a writing to refresh the memory of a witness, the rule does not specifically prohibit a witness from reading the writing aloud. It appears Nguyen's argument actually relies on the "present recollection refreshed" doctrine. Under that doctrine, " 'the witness looks at the memorandum to refresh his memory of the events, but then proceeds to testify upon the basis of his present independent knowledge.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 57, quoting *State v. Scott*, 31 Ohio St.2d 1, 5-6, 285 N.E.2d 344 (1972). "The testimony of the witness whose recollection has been refreshed is the evidence, not the contents of the writing." *Powell* at ¶ 57, citing 1 Giannelli, *Evidence*, Section 612.3, at 578 (3d Ed.2010). Therefore, a " 'party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury.' " *Powell* at ¶ 57, quoting *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996).

{¶74} In addition, Nguyen asserts the court violated his Fourteenth Amendment rights when it allowed the victim to read the exhibits to the jury. However, he does not address the Fourteenth Amendment in his argument. Instead, he focuses on the Sixth

Amendment Confrontation Clause even though he did not assign this as an error.  Even if we overlooked this failure to comply with the appellate rules and address the Sixth Amendment argument, see App.R. 12(A)(2) and 16(A), Nguyen did not make the argument at the trial level and forfeited all but plain error as to it.

**{¶75}**  Even if we assume that the court erred when it permitted the victim to read State's Exhibits 23, 33, 34, and 91, and even if such error was of constitutional magnitude, it was harmless beyond a reasonable doubt.   Exhibits 33 and 34 are copies of text messages.  Derek Shoemaker testified these messages were sent from Nguyen's phone to the victim's phone after the rape.  He read the messages to the jury without objection.  Thus, the contents of those exhibits would have been before the jury even if the court limited the victim's testimony.

**{¶76}**  Exhibits 23 and 91 relate to two phone calls, which Jenny did not answer, that Nguyen purportedly made to her after the rape.  The exhibits contain little information – a name, the defendant's phone number, a date and time, a "duration" of "0 h 0 min 00 sec," and the words "Type:  Missed Call."  After looking at the exhibits, the victim testified each indicated a "missed call."  However, Jenny already testified that she ignored two calls Nguyen made to her after the rape.  Moreover, two other admitted exhibits (the defendant's phone records and a document titled "MOBILITY USAGE" for the defendant's phone) confirm these calls occurred.  Therefore, the jury would have known about the missed calls even if the court prohibited the victim from reading the exhibits.  We overrule the eighth assignment of error.

VIII.  Manifest Weight of the Evidence and Sufficiency of the Evidence

**{¶77}**  In his seventh assigned error, Nguyen contends his convictions are

against the manifest weight of the evidence and insufficient evidence supports them. "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.). Therefore, we first consider whether Nguyen's convictions are against the manifest weight of the evidence.

{¶78} To determine whether a conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991).

{¶79} We must remember the weight to be given evidence and credibility to be afforded testimony are issues for the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995). The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover,

"[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph four of the syllabus, construing and applying Ohio Constitution, Article IV, Section 3(B)(3).

## A.  Rape

**{¶80}**  The jury found Nguyen guilty of first-degree felony rape in violation of R.C. 2907.02(A)(2), which provides:  "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  Nguyen implicitly concedes that Jenny's testimony alone, if believed, supports his conviction.  But he contends that her testimony and that of other State's witnesses is so unbelievable the jury lost its way in crediting it.  However, as we explained in *State v. Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-1744, ¶ 31:

> It is the trier of fact's role to determine what evidence is the most credible and convincing.  The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support.  Our role is simply to insure the decision is based upon reason and fact.  We do not second guess a decision that has some basis in these two factors, even if we might see matters differently.

Having heard the testimony and observed the demeanor of the witnesses, the jury may choose to believe all, part, or none of the testimony presented by any of them.  *State v. Delawder*, 4th Dist. No. 10CA3344, 2012-Ohio-1923, ¶ 18.

**{¶81}**  Here, the jury chose to believe the State's version of events, and we will not substitute our judgment for that of the fact finder under these circumstances.  The evidence reasonably supports the conclusion that Nguyen purposely compelled Jenny to engage in sexual conduct, i.e., vaginal intercourse, with him by force or threat of force.  In addition to Jenny's testimony about Nguyen's actions, the State presented

evidence that after the rape Jenny had abrasions or scratches on her ankles and a wrist, and she had dry adhesive on one of her wrists. Law enforcement found latex gloves and a piece of the rope purportedly used at the crime scene. The State also presented evidence that Jenny had redness and bruising on her cervix and Nguyen's semen in her vagina. Other evidence placed Nguyen's cell phone in the Athens area around the time of the rape. And a few days after the rape, he sent Jenny a text message expressing hope that she could "forgive" him. After reviewing the entire record, we conclude the jury did not lose its way or create a manifest miscarriage of justice when it found Nguyen guilty of rape.

## B. Kidnapping

**{¶82}** The jury found Nguyen committed kidnapping in violation of R.C. 2905.01(A)(2), which provides:

> (A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter[.]

**{¶83}** Again, Nguyen implicitly concedes Jenny's testimony, if believed, supports his conviction. However, he complains she "is not credible" for the same reasons outlined in his argument against the rape conviction. (Appellant's Br. 30). But again, we will not usurp the jury's role to determine credibility. *See Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-1744, at ¶ 31. Therefore, we reject Nguyen's argument.

## C. Aggravated Burglary

**{¶84}** The jury found Nguyen guilty of aggravated burglary under R.C.

2911.11(A)(1), which states:

> (A) No person, by force, stealth, or deception, shall trespass in an
> occupied structure or in a separately secured or separately occupied
> portion of an occupied structure, when another person other than an
> accomplice of the offender is present, with purpose to commit in the
> structure or in the separately secured or separately occupied portion of the
> structure any criminal offense, if any of the following apply:

> (1) The offender inflicts, or attempts or threatens to inflict physical harm on
> another[.]

**{¶85}** Nguyen contends the State failed to prove he trespassed. A person commits a trespass when, without privilege to do so, he knowingly enters or remains on the land or premises of another. R.C. 2911.21(A)(1); *See* R.C. 2911.10. Evidence suggests Jenny implicitly consented to Nguyen's entrance into the apartment. But as Nguyen acknowledges, "the privilege of an invited guest to be on the premises is terminated if he commits a violent act." *State v. Young*, 4th Dist. No. 07CA3195, 2008-Ohio-4752, ¶ 25, citing *State v. Steffan*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987). He implicitly concedes that Jenny's testimony, if believed, supports a finding that he committed a violent act.

**{¶86}** Nguyen again argues Jenny is not credible, so the jury could not believe her testimony about "the rape, i.e. the terminating event * * *." (Appellant's Br. 30). And because Jenny never explicitly told Nguyen to leave, he claims the aggravated burglary conviction is against the manifest weight of the evidence. Once again Nguyen's argument asks us to usurp the jury's role to determine credibility, which we will not do. *See Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-1744, at ¶ 31. The jury was free to believe Jenny's testimony. Therefore, we reject his argument.

D. Tampering with Evidence

**{¶87}** The jury found Nguyen tampered with evidence in violation of R.C.

2921.12(A)(1), which provides:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

**{¶88}** The State presented evidence that Nguyen used medical tape, rope, and scissors during this incident. Jenny testified that Nguyen took the rope with him and that she thought he took the tape and scissors too. Law enforcement only found what Jenny later identified as a piece of the rope at the crime scene and did not find the tape or scissors. Nguyen contends that it "does not make sense" that he would take items from the scene but leave behind latex gloves as the State claimed. (Appellant's Br. 31). In other words, he suggests that if he did tamper with evidence, he would have been smart enough to remove all of it. But the jury was free to conclude he was careless.

**{¶89}** Obviously at the time Nguyen would have tampered with evidence, an official proceeding or investigation was not yet in progress. Nguyen argues that he also did not know an official proceeding or investigation was about to be or likely to be instituted. Jenny testified she told Nguyen she would not report him to police and "his demeanor thereafter changed." (Appellant's Br. 31). And "[i]f true, he had no reason to remove evidence, nor would he have reason to know of any 'official proceeding or investigation.' " (Appellant's Br. 31). However, the jury had no obligation to find that Nguyen actually believed the victim would not report him. "When an offender commits an unmistakable crime, the offender has constructive knowledge of an impending

investigation of the crime committed." *State v. Schmitz*, 10th Dist. No. 05AP-200, 2005-Ohio-6617, ¶ 17. The victim's testimony, which again, the jury was free to believe, establishes that Nguyen committed unmistakable crimes.

**{¶90}** Nguyen also complains that he could not have "removed" the tape, rope, or scissors from the crime scene if he owned them and brought them to the apartment. However, ownership is irrelevant under R.C. 2921.12. From the victim's testimony and fact that law enforcement did not find tape, scissors, and most of the rope at the victim's house, the jurors could conclude Nguyen removed those items from the crime scene.

**{¶91}** In addition, Nguyen argues there was no evidence he "did anything 'to impair the evidence's availability' " in an official proceeding or investigation. (Appellant's Br. 31). But under the statute, the offender does not have to actually impair the evidence's value or availability. It is sufficient that the offender alters, destroys, conceals, or removes the item "with purpose" to impair its value or availability. Moreover, the jury could logically conclude that was Nguyen's purpose because he committed unmistakable crimes and removed items used to facilitate those crimes from the victim's apartment before he left. And he expressed concern about the victim contacting law enforcement. Therefore, the evidence reasonably supports the conclusion that Nguyen tampered with evidence.

**{¶92}** Nguyen's convictions are not against the manifest weight of the evidence. This conclusion necessarily means sufficient evidence supports his convictions. Accordingly, we overrule the seventh assignment of error.

IX. Jury Selection

**{¶93}** In his ninth assignment of error, Nguyen complains that the trial court

committed errors in the jury selection process.

### A.  Pre-Trial Excuse and Deferral of Prospective Jurors

**{¶94}**  An assignment commissioner drew a panel of 110 prospective jurors for this case.  Before trial, the court notified the parties it excused or deferred several for various reasons, like vacations and medical issues.  Nguyen argues the court erred because it did this "ex parte," violating his rights under the Sixth and Fourteenth Amendments.  " '[Q]uestions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo.' " *Dorsey*, 5th Dist. No. 11CA39, 2012-Ohio-611, at ¶ 19, quoting *Dunivant*, 5th Dist. No. 2003CA00175, 2005-Ohio-1497, at ¶ 7.  Nguyen also claims the court violated Crim.R. 43 (which provides that the defendant must be physically present at the impaneling of the jury) and R.C. 2945.27 and Crim.R. 24 (which discuss a defendant's right to examine prospective jurors).  However, because Nguyen failed to specifically make these arguments before the court impaneled the jury, he forfeited all but plain error review as to them.  *See* Section III.A., *supra* (explaining this standard of review).

**{¶95}**  The trial court acted sua sponte in this matter, not "ex parte," i.e., it did not discuss the prospective jurors with the State outside the presence of defense counsel.  In addition, "[t]he attendance or non-attendance of jurors, * * * and their discharge from attendance on grounds of personal excuse, * * * [are] matters between the court and the jurors, and with which the parties cannot, of right, interfere."  *Bond v. State*, 23 Ohio St. 349, 355 (1872), cited with approval in *State v. Murphy*, 91 Ohio St.3d 516, 525, 747 N.E.2d 765 (2001).  Therefore, " '[i]t is no ground for reversal of judgment in a criminal case, that the court, before the day set for trial, discharged some of the jurors in

attendance on grounds of personal excuse and upon their unsworn statements ***.' " *State v. Clemons*, 3d Dist. No. 1-86-36, 1988 WL37129, *6 (Mar. 30, 1998), quoting *Bond* at paragraph three of the syllabus.  "A party has no right to have any particular juror on the panel.  His right is to an impartial jury, and a juror's erroneous excusal does not compromise the jury's impartiality."  *Murphy* at 525.

{¶96}  The excuse and deferral of prospective jurors did not cause any disqualified or biased juror to be seated.  And the court did not impair Nguyen's ability to exercise peremptory challenges.  Thus, the court did not deny him the essential benefits of voir dire.  *Id.*  And even if we discerned an error in the court's process, "[a]bsent a systematic and intentional exclusion of a particular group of persons from jury service, minor or technical defects in the jury selection process do not result in a constitutional infirmity warranting reversal."  *State v. Barney*, 4th Dist. No. 97CA12, 1999 WL 378755, *10 (June 7, 1999).  Accordingly, we reject Nguyen's argument.

B.  Removal of Prospective Juror for Cause

{¶97}  Nguyen also complains that during voir dire, the court "committed error" when it removed prospective juror Simonton for cause, i.e., financial hardship. (Appellant's Br. 35).  In his assigned error, it appears Nguyen complains this ruling violated the Sixth and Fourteenth Amendments, R.C. 2945.27, Crim.R. 24, and Crim.R. 43.  However, Nguyen does not mention these authorities in his argument, and because he questioned Simonton during voir dire, they seem inapplicable.  Therefore, we will apply the general analysis for challenges for cause.

{¶98}  " 'A person called as a juror in a criminal case may be challenged' for a number of reasons, including  '[t]hat he otherwise is unsuitable for any other cause to

serve as a juror.' " *State v. White*, 9th Dist. No. 24960, 2010-Ohio-2865, ¶ 7, quoting

R.C. 2945.25(O). *See* Crim.R. 24(C)(14). Financial hardship can make a prospective

juror "unsuitable" to serve as a juror. *White* at ¶ 13. "The validity of each challenge * * *

shall be determined by the court." R.C. 2945.25. *See* Crim. R. 24(C). "A trial court's

ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly

arbitrary and unsupported by substantial testimony, so as to constitute an abuse of

discretion." *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997).

{¶99} During voir dire, the prosecutor indicated the trial might last one to three

weeks. Simonton stated that she is a home health aide six days a week, and for each

week the trial lasted she would miss four days of work.[4] Simonton explained she lives

paycheck to paycheck. The following exchange occurred:

> [DEFENSE COUNSEL]:     One question, Ms. Simonton. Would you
> rather not be on this jury because of what you just said? Because I want
> you on the jury.
>
> BY JUROR SIMONTON:   I mean I would be on it. I mean I'll get by
> somehow. But (inaudible)
>
> BY THE JUDGE:           Well you'll get thirty dollars a day. I don't know
> if that helps you very much or not. Probably not as much as working.
>
> BY JUROR SIMONTON:   It would help. But like she said usually you
> have to wait before it's over and then they mail the check to you. And
> that's was [sic] my thing, the two weeks, when I miss that pay to go
> towards my bills. I mean I'll figure it out. I'll borrow the money and pay it
> back or something. But –
>
> BY THE JUDGE:     Okay. Thank you.

{¶100}      Nguyen is correct that Simonton expressed a willingness to be on

the jury and said she would "get by somehow." Regardless, the court could conclude

---

[4] These statements appear in the trial day 1 transcript at pages 113-114. Simonton is not identified by
name there, but we surmised she is the speaker because in later portions of the transcript the court
identifies Simonton as a "home health nurse" before questioning her more about her financial situation.

she had a financial hardship because her service as a juror might put her into debt.

Simonton indicated that to "get by" she might have to borrow money because she lives

paycheck to paycheck and would only be able to work a third of her normal work week

for every week the trial lasted.  Therefore, the court's decision to remove her for cause

was supported by a discernible rational basis, i.e., it did not constitute an abuse of

discretion.  We reject Nguyen's argument and overrule the ninth assignment of error.

## X.  Merger

{¶101}        In his fifth assignment of error, Nguyen contends the trial court

violated his right against Double Jeopardy when it failed to merge his convictions for

kidnapping, rape, and aggravated burglary under R.C. 2941.25.  This statute "codifies

the protections of the Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution and Section 10, Article I of the Ohio Constitution, which prohibit[ ]

multiple punishments for the same offense."  *State v. Underwood*, 124 Ohio St.3d 365,

2010-Ohio-1, 922 N.E.2d 923, ¶ 23.  R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute
> two or more allied offenses of similar import, the indictment or information
> may contain counts for all such offenses, but the defendant may be
> convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of
> dissimilar import, or where his conduct results in two or more offenses of
> the same or similar kind committed separately or with a separate animus
> as to each, the indictment or information may contain counts for all such
> offenses, and the defendant may be convicted of all of them.

{¶102}        "The question of whether offenses should merge under R.C.

2941.25 ordinarily presents a question of law we review de novo."  *Delawder*, 4th Dist.

No. 10CA3344, 2012-Ohio-1923, at ¶ 38.  But, at the sentencing hearing Nguyen

argued only his convictions for rape and kidnapping merge.  So on the question of

whether his aggravated burglary conviction should also merge with the rape or kidnapping convictions, we apply plain error. "However, the Supreme Court of Ohio has previously held that imposition of multiple sentences in violation of R.C. 2941.25 constitutes plain error." *Id.* citing *Underwood* at ¶ 31.

**{¶103}** "Through a series of opinions the Supreme Court of Ohio has advised and re-advised lower courts on the difficult task of applying Ohio's multiple-count statute to determine which criminal convictions require merger." *Delawder* at ¶ 39. In the plurality decision of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which was released after Nguyen's sentencing hearing, the Court expressly overruled its then current test for merger. Under the new test, the trial court must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic). *Johnson* at ¶ 48. If the offenses are so alike that the same conduct can subject the accused to potential culpability for both, they are "of similar import" and the court must proceed to the second step. The court must then determine whether the offenses in fact were committed by the same conduct, i.e. committed as a single act with a single animus. *Id.* at ¶ 49. If so, merger is necessary. However, if the offenses resulted from separate acts or were performed with a separate animus, or if the commission of one offense will never result in the commission of the other, the offenses will not merge. *Id.* at ¶ 51.

A. Rape and Kidnapping

**{¶104}** It is possible to commit rape under R.C. 2907.02(A)(2) and kidnapping under R.C. 2905.01(A)(2) with the same conduct. *See State v. Rose*, 12th

Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 91.  *See also* Sections VIII.A and VIII.B., *supra* (quoting the statutory provisions).  If the offender uses force or threat to restrain the liberty of another person for the kidnapping offense, that same force or threat could be the "force or threat of force" used to compel that person to submit to sexual conduct for the rape offense.  Therefore, the trial court correctly found that these are offenses of similar import even though it applied the pre-*Johnson* analysis.

{¶105}     The trial court orally found that Nguyen had a separate animus for each crime; we agree with this conclusion.  The State suggests no animus for the rape aside from the obvious – sexual gratification.  To be convicted of kidnapping under R.C. 2905.01(A)(2), the jury must find the defendant's purpose was to facilitate the commission of any felony or flight thereafter.  At trial, the State argued that Nguyen's purpose was to facilitate the felony of rape, the felony of intimidation of a victim in a criminal case (R.C. 2921.04), and/or flight thereafter.

{¶106}     At one point before the rape, Nguyen tied up the victim with rope but then cut the rope off.  After the rape, Nguyen told the victim he was taking her to New York, made her pack and get dressed, used medical tape to bind her arms together, and took her from the bedroom to the living room.  He also attempted to blindfold her and tape her mouth shut.  And he asked the victim about whether she would report him to police.  When she promised not to, he cut her arms free.

{¶107}     This evidence suggests Nguyen restrained and moved the victim after the rape to facilitate his flight from the crime scene or to intimidate her into not filing criminal charges.  In other words, evidence supports the conclusion that the post-rape restraint and movement of the victim was not merely incidental to the rape.  *See*

*State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus.  Because a

separate animus exists for the rape and kidnapping convictions, they are not allied

offenses, and the trial court could sentence Nguyen separately for each crime.

### B.  Rape and Aggravated Burglary

**{¶108}**        The trial court found that rape and aggravated burglary were not

offenses of similar import.  However, using the *Johnson* test, we conclude it is possible

to commit rape under R.C. 2907.02(A)(2) and aggravated burglary under R.C.

2911.11(A)(1) with the same conduct.  *See* Sections VIII.A. and VIII.C., *supra* (quoting

the statutory provisions).  The force or threat of force used to commit the rape could

satisfy the requirement for aggravated burglary that the offender "inflicts, or attempts or

threatens to inflict physical harm on another[.]"  R.C. 2911.11(A)(1).  But even though

the offenses are of similar import, Nguyen can be sentenced for both if he committed

the crimes separately or with a separate animus.  We remand for the trial court to

consider this issue and if necessary, to resentence Nguyen accordingly.  *See Delawder*,

4th Dist. No. 10CA3344, 2012-Ohio-1923, at ¶ 5.

### C.  Kidnapping and Aggravated Burglary

**{¶109}**        The trial court did not address whether the kidnapping and

aggravated burglary convictions merged.  Using the *Johnson* test, we conclude it is

possible to commit kidnapping under R.C. 2905.01(A)(2) and aggravated burglary under

R.C. 2911.11(A)(1) with the same conduct.  *See* Sections VIII.B. and VIII.C., *supra*

(quoting the statutory provisions).  To commit kidnapping under R.C. 2905.01(A)(2), the

offender must use "force, threat, or deception."  If the offender uses force or threat, that

same force or threat could satisfy the requirement for aggravated burglary that the

offender "inflicts, or attempts or threatens to inflict physical harm on another[.]" R.C.
2911.11(A)(1). But even though the offenses are of similar import, Nguyen can be
sentenced for both if he committed the crimes separately or with a separate animus.
We remand for the trial court to consider this issue and if necessary, to resentence
Nguyen accordingly. *See Delawder* at ¶ 5. Therefore, we overrule the fifth assigned
error in part, sustain it in part, and remand for the purposes outlined above.

### XI.  Sentence for Tampering with Evidence

**{¶110}**      In his sixth assignment of error, Nguyen contends that the court
abused its discretion when it imposed maximum and consecutive sentences. However,
if on remand the trial court concludes that the kidnapping and aggravated burglary
offenses merge or that the rape and aggravated burglary charges merge, some of the
issues raised in this assignment of error as to those three convictions might be rendered
moot. Therefore, we will decline to address the arguments related to those offenses at
this time. *See State v. Smith*, 9th Dist. No. 00CA007619, 2001 WL 111562, *4 (Feb. 7,
2001). Nonetheless, we must still address Nguyen's five-year maximum sentence for
tampering with evidence (which the court ordered him to serve concurrently to the
sentences for the other charges).

**{¶111}**      In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d
124, the Supreme Court of Ohio announced the two-step analysis for appellate review
of felony sentences. First, we "must examine the sentencing court's compliance with all
applicable rules and statutes in imposing the sentence to determine whether the
sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If the sentence is
not clearly and convincingly contrary to law, we review it for an abuse of discretion. *Id.*

**{¶112}** Nguyen does not argue that his tampering with evidence sentence is clearly and convincingly contrary to law. He cites no failure of the trial court to comply with any "applicable rules and statutes," nor do we see any obvious violation of this requirement. Thus, we conclude his sentence is not clearly and convincingly contrary to law.

**{¶113}** Next, we must determine whether the trial court abused its discretion in selecting Nguyen's sentence for tampering with evidence. Again, the term "abuse of discretion" implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Adams*, 62 Ohio St.2d at 157, 404 N.E.2d 144.

**{¶114}** Nguyen claims evidence does not support a finding that he "brought gloves or rope" to the victim's home. (Appellant's Br. 22). However, it appears Nguyen makes this statement to contest a comment the court made about the aggravated burglary charge. To the extent the statement might relate to the tampering with evidence sentence, we find it unpersuasive. In Section VIII.D. we already determined the manifest weight of the evidence supports his conviction for that charge.

**{¶115}** Nguyen also generally argues that the trial court should have given more weight to the fact that he was a 32-year-old first-offender. However, the mere fact that Nguyen had no prior convictions does not demonstrate an arbitrary, unreasonable, or unconscionable attitude on the part of the court in sentencing him for tampering with evidence. Therefore, we reject this argument and overrule the sixth assignment of error as to the sentence for that offense.

## XII. Summary

**{¶116}** We overrule the first, second, third, fourth, seventh, eighth, and

ninth assignments of error.  We overrule the fifth assignment of error in part, sustain it in

part, and remand for further proceedings.  The sixth assignment of error is sustained in

part; we decline to consider the remainder of that assigned error because it may be

rendered moot by our remand.

JUDGMENT AFFIRMED IN PART,<br>
REVERSED IN PART,<br>
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**